**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **WIRELESSWERX IP, LLC,** | |
| **Plaintiff,** | **Civil Action No. 4:26-cv-07151** |
| **v.** | |
| **PARKING GUIDANCE SYSTEMS, LLC,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**PLAINTIFF'S ORIGINAL COMPLAINT**

Plaintiff, WirelessWerx IP, LLC, ("WirelessWerx" or "Plaintiff") files this Original Complaint for patent infringement against Defendant Parking Guidance Systems, LLC ("PGS" or "Defendant"), and alleges as follows:

## I. PARTIES

1. Plaintiff WirelessWerx IP, LLC is a Texas limited liability company with an address at 5900 Balcones Dr., Suite 100, Austin, Texas 78731.

2. On information and belief, Defendant Parking Guidance Systems, LLC is a limited liability company organized and existing under the laws of the State of Texas, with a principal and regular established place of business at 1811 First Oaks Street, Suite 100, Richmond, Texas 77406. Defendant can be served through its registered agent, Capitol Corporate Services, Inc., 1501 MoPac Expy., Suite 220, Austin, Texas 78746, at Defendant's regular and established business, or anywhere Defendant can be found.

3. On information and belief, Defendant directly and through its agents, affiliates, and intermediaries develops, designs, makes, uses, configures, distributes, markets, offers to sell, and sells the accused products and services in the United States, including in the Southern District of

Texas, and otherwise directs infringing activities to this District in connection with those products and services.

4. On information and belief, Defendant offers the accused products and services under its own name and through the "ParkZen" brand and platform, which Defendant acquired or with which it merged in or about 2025. On information and belief, the ParkZen smartphone applications, the ParkZen application programming interface ("API"), and the associated operator-facing dashboard and back-end services (collectively, the "ParkZen Platform") are owned, controlled, operated, offered, and/or commercialized by Defendant, directly or through one or more subsidiaries, affiliates, or predecessors, including an entity identified in certain published terms as FEEDAFAN, LLC.

## II. JURISDICTION & VENUE

5. This civil action arises under the Patent Laws of the United States, 35 U.S.C. § 1 et seq., including without limitation 35 U.S.C. §§ 271, 281, 283, 284, and 285, based on Defendant's unauthorized commercial manufacture, use, importation, offer for sale, and sale of the Accused Instrumentalities in the United States. This is a patent infringement lawsuit over which this Court has subject matter jurisdiction under, inter alia, 28 U.S.C. §§ 1331, 1332, and 1338(a).

6. This United States District Court has general and specific personal jurisdiction over Defendant because, directly or through intermediaries, Defendant has committed acts within this District giving rise to this action and are present in and transact and conduct business in and with residents of this District and the State of Texas.

7. Plaintiff's causes of action arise, at least in part, from Defendant's contacts with and activities in this District and the State of Texas.

8. Defendant has committed acts of infringing the Patents-in-Suit within this District and the State of Texas by making, using, selling, offering for sale, and/or importing in or into this District and elsewhere in the State of Texas, products and services claimed by the Patents-in-Suit, including without limitation products made by practicing the claimed methods of the Patents-in-Suit. Defendant, directly and through intermediaries, makes, uses, sells, offers for sale, imports, ships, distributes, advertises, promotes, and/or otherwise commercializes such infringing products into this District and the State of Texas. Defendant regularly conducts and solicits business in, engages in other persistent courses of conduct in, and/or derives substantial revenue from goods and services provided to residents of this District and the State of Texas.

9. Personal jurisdiction exists over Defendant because Defendant has minimum contacts with this forum as a result of business regularly conducted within the State of Texas and within this district, and, on information and belief, specifically as a result of, at least, committing the tort of patent infringement within Texas and this District. This Court has personal jurisdiction over Defendant, in part, because Defendant does continuous and systematic business in this District, including by providing infringing products and services to the residents of the Southern District of Texas that Defendant knew would be used within this District, and by soliciting business from the residents of the Southern District of Texas. For example, Defendant is subject to personal jurisdiction in this Court because, inter alia, Defendant has regular and established places of business throughout this District and directly and through agents regularly does, solicits, and transacts business in the Southern District of Texas. https://parkingguidancesystems.com/parking-solutions/. Accordingly, this Court's jurisdiction over the Defendant comports with the constitutional standards of fair play and substantial justice and arises directly from the Defendant's purposeful minimum contacts with the State of Texas.

10. The amount in controversy exceeds $75,000 exclusive of interests and costs.

11. Venue is proper in this Court under 28 U.S.C. § 1400(b) based on information set forth herein, which is hereby repeated and incorporated by reference. Further, upon information and belief, Defendant has committed acts of infringement and/or advertises, markets, sells, and/or offers to sell products, including infringing products, in this District. In addition, and without limitation, Defendant has regular and established places of business throughout this District.

## III. RELATED ACTION

12. WirelessWerx and Defendant are parties to a pending action in this District styled WirelessWerx IP, LLC v. Parking Guidance Systems, LLC, Civil Action No. 4:26-cv-00208 (the "Pending Action"), in which WirelessWerx asserts U.S. Patent No. 8,009,037. WirelessWerx asserted the Patents-in-Suit in its Second Amended Complaint in the Pending Action, filed on August 5, 2026 together with amended infringement contentions and element-by-element claim charts. Defendant's counsel declined to consent to the addition and continued assertion of the Patents-in-Suit in the Pending Action. By agreement of the parties, WirelessWerx withdrew its claims on the Patents-in-Suit from the Pending Action without prejudice through its Third Amended Complaint, and WirelessWerx now asserts those claims in this action.

## IV. THE PATENTS-IN-SUIT

13. On October 23, 2007, U.S. Patent No. 7,286,929 ("the '929 patent"), entitled "Method and System to Configure and Utilize Geographical Zones," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '929 patent is attached as Exhibit A.

14. On July 21, 2009, U.S. Patent No. 7,564,348 ("the '348 patent"), entitled "Method and System to Monitor Movable Entities," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '348 patent is attached as Exhibit C.

15. On February 5, 2013, U.S. Patent No. 8,368,531 ("the '531 patent"), entitled "Method and System to Control Movable Entities," was duly and legally issued by the United States Patent and Trademark Office. A true and correct copy of the '531 patent is attached as Exhibit E.

16. The '929, '348, and '531 patents are referred to collectively as the "Patents-in-Suit." WirelessWerx owns all right, title, and interest in and to the Patents-in-Suit by assignment, including the right to sue for and recover damages for infringement occurring during the enforceable terms of the Patents-in-Suit. The '929 patent and the '531 patent have expired; as to those patents, Plaintiff asserts infringement only for conduct occurring during each patent's enforceable term and within the applicable damages period, and Plaintiff does not seek injunctive relief or an ongoing royalty for infringement of the '929 or '531 patents after expiration. The '348 patent remains in force.

17. The Patents-in-Suit share a common technological disclosure directed to controlling, monitoring, configuring, and using movable-entity systems through wireless devices, transponders, geographical zones, and location-based commands or services. The patents claim and describe specific techniques for defining a geographical zone, loading zone-related coordinates or data to a device, evaluating the device's status relative to the zone, and executing or transmitting a configurable operation when the relevant event or location condition occurs. Ex. A, Abstract; Ex. C, Abstract; Ex. E, Abstract.

18. The specifications identify a concrete technological problem. Conventional GPS systems were useful for locating vehicles, but they were limited to relaying GPS information to a control center or web server and plotting the vehicle's position on a computer map. Ex. A, 1:28–50; Ex. C, 1:32–54; Ex. E, 1:45–2:4. Those systems did not provide the claimed architecture in which the transponder or portable wireless device is configured with zone data, evaluates location or event status, and performs a configurable operation or presents a location-based service based on the device's relationship to a preconfigured zone.

19. The claimed inventions are not directed to the abstract idea of showing a map or sending generic location information. The patents describe and claim particular computer-implemented techniques: a transponder or portable electronic wireless device with memory and processing capability; a computing device or control center; a geographical zone defined by coordinates, grid sections, or a pixilated image; and a command or event associated with the status or location of the movable entity relative to that zone. See, e.g., Ex. A, 3:1–13, 26:22–43; Ex. C, 25:10–25, 25:52–26:5; Ex. E, 27:55–28:8.

20. The specifications also disclose why the claimed techniques improve the operation of the tracking and control system. A transponder can be mounted, attached, manufactured, or otherwise included on or within a vehicle or other entity; within the system, the transponder collects, processes, and communicates information about the entity and, when requested, issues commands and instructions to the local article or entity. Ex. A, 6:18–27; Ex. C, 6:18–27; Ex. E, 6:18–27. That architecture places meaningful processing and configuration capability at the device, rather than treating the device as a passive source of coordinates.

21. The patents further disclose a specific way to define and evaluate irregular geographic zones. Coordinates can be assigned to pixels in a pixilated image; the device may

define a bounding box around the coordinates; pixels corresponding to the coordinates are activated; and lines are extended between activated pixels to form an enclosed, contiguous pixel array representing the zone. Ex. C, 14:61–15:5; Ex. E, 14:61–15:5. The same disclosure explains how a current position fix can be tested against the pixel map by drawing lines from the position fix to the borders of the map and evaluating zone-boundary crossings. Ex. A, 27:5–23.

22. The asserted claims are limited to this technological setting. The '929 patent requires a particular method of identifying a geographical area by using a computer map, a grid, a user-selected section, and a pixilated computer image loaded to a transponder. Ex. A, claim 9. The '348 patent requires, among other things, loading coordinates to an attached transponder, programming a microprocessor to define a geographical zone using a pixilated image, determining the occurrence of an event associated with the status of the entity in relation to the zone, and transmitting event-related data. Ex. C, claim 1. The '531 patent requires a method of providing a location-based service by programming a computing device at a control center to define a geographical zone, loading a portable electronic wireless device with zone-associated data, and sending a command that causes the portable device to present an offer or service when located in the area. Ex. E, claim 1.

23. The ordered combinations claimed by the Patents-in-Suit were not a conventional arrangement of generic components performing their ordinary functions. They recite specific, interrelated steps and device roles that improve how a wireless tracking or location-based service system defines zones, stores zone information, evaluates location or status, and triggers a control, monitoring, notification, offer, or service function. The claims do not preempt all uses of maps, GPS, smartphones, parking guidance, or location-based services; they are confined to the claimed

combinations of devices, data, geographic-zone definitions, pixilated-image representations, commands, and event or location-triggered operations.

24. The asserted claims are definite. They recite the actors, devices, data, and operations that make up the claimed methods, including the transponder or portable electronic wireless device, a computing device or control center, a memory, a microprocessor or computing device, coordinates or zone data, a pixilated image, and the command or event-related operation. The specifications disclose corresponding structure and operation for those terms, including the transponder architecture shown in FIGS. 1A, 1B, and 2; configuration interfaces shown in FIGS. 4A–4G; pixel-zone techniques shown in FIGS. 5A–5B; and control-center and gateway architecture shown in FIGS. 6-1 and 6-2.

## V. DEFENDANT'S ACCUSED PRODUCTS AND SERVICES

25. The accused products and services are Defendant's smart-parking products and services, including the ParkZen Platform and the products and services Defendant markets as "PGS | PARK NOW" and its "Smart Parking Mobile Application for Garages and Lots" (collectively, the "Accused Instrumentalities"). The Accused Instrumentalities include the ParkZen iOS and Android applications, the ParkZen API and any associated software development kit, the operator-facing dashboard and back-end services, and associated parking-guidance, parking-availability, mapping, notification, and payment-session functionality.

26. On information and belief, the Accused Instrumentalities load parking-location and parking-region data from Defendant's servers, API, dashboard, or control-center computing devices to smartphones running the ParkZen application. The smartphone operates as the claimed transponder or portable electronic wireless device for the asserted claims, because it has memory, a microprocessor, wireless communication capability, GPS/location capability, Bluetooth

functionality, and software configured to communicate parking-related data with Defendant's servers and services. See Ex. B at 4–12 (claim elements 9.0–9.1); Ex. D at 4–12 (claim elements 1.0–1.1); Ex. F at 4–18 (claim elements 1.0–1.2).

27. On information and belief, the Accused Instrumentalities define parking areas as geographical zones on digital maps and use smartphone location information, Bluetooth vehicle-connection information, and motion or activity data to detect when a user is driving, parked, entering a lot, vacating a space, or located within an applicable parking region. Plaintiff's claim charts identify the ParkZen application, ParkZen API and servers, ParkZen parking-management platform, participating parking facilities, and displayed digital maps as the accused structures and operations that meet the asserted claim limitations. See Ex. B at 17–24 (claim elements 9.2–9.4); Ex. D at 15–25 (claim elements 1.2–1.4); Ex. F at 13–22 (claim elements 1.1–1.3).

28. On information and belief, the Accused Instrumentalities use a control center and server/API back end that aggregate parking data from multiple users, determine parking availability within defined regions, transmit notifications and commands to user smartphones, and cause the ParkZen application to display available parking, navigation, offers, or other services associated with the user's location. The asserted infringement is direct infringement under 35 U.S.C. § 271(a) of each of the Patents-in-Suit and, as to the '348 patent, induced infringement under 35 U.S.C. § 271(b) and willful infringement. WirelessWerx does not allege contributory infringement.

29. On information and belief, Defendant makes and uses the Accused Instrumentalities by owning, controlling, operating, configuring, and commercializing the ParkZen Platform, including the smartphone applications, server/API services, operator-facing dashboard, parking-region configuration, parking-availability processing, and user-facing

notification and guidance functionality. Defendant also sells and offers to sell the Accused Instrumentalities and related services to parking operators and other customers, and obtains commercial benefit from their operation.

## VI. COUNT I — DIRECT INFRINGEMENT OF THE ’929 PATENT (35 U.S.C. § 271(a))

30. WirelessWerx repeats and realleges the preceding paragraphs as if fully set forth herein.

31. Defendant directly infringed one or more asserted claims of the ’929 patent, including at least the claims identified in Exhibit B, by making, using, testing, selling, offering for sale, and/or importing the Accused Instrumentalities in the United States during the enforceable term of the ’929 patent and within the applicable damages period. WirelessWerx does not seek damages for conduct occurring after expiration of the ’929 patent. Exhibit B charts the ParkZen Platform and PGS | PARK NOW products and services against the asserted ’929 claims on an element-by-element basis. See Ex. B at 3–4 (asserted claims and element 9.0).

32. The Accused Instrumentalities performed a method to identify a geographical area for regulating an entity. The entity is the user’s vehicle, the user’s smartphone running the ParkZen application is associated with that vehicle, and the ParkZen Platform uses the smartphone’s GPS location, Bluetooth connection, motion and activity data, and parking-region information to regulate parking guidance and parking availability for that vehicle. See Ex. B at 4 (claim element 9.0).

33. The Accused Instrumentalities allowed a user to identify a geometrical area in a computer map using two coordinate attributes. The ParkZen application displays an interactive digital map, uses the smartphone’s GPS latitude and longitude together with the coordinates of

available parking locations, and allows the user to identify the desired parking region or destination area. See Ex. B at 12 (claim element 9.1).

34. The Accused Instrumentalities divided the identified geometrical area into a grid and allowed the user to select at least one section from within that grid to define a geographical area. Exhibit B identifies the ParkZen digital map, desired parking region, and available parking sections as the accused functionality. See Ex. B at 17–22 (claim elements 9.2–9.3).

35. The Accused Instrumentalities associated the selected section to a pixel in a pixilated computer image and loaded the pixilated computer image to a memory in a transponder. In the accused system, the displayed parking region and parking-space data are represented on the ParkZen digital map, and the map, region, and parking-location information are loaded to and stored in the smartphone memory for display and processing by the ParkZen application. See Ex. B at 22–24 (claim element 9.4).

36. The asserted dependent claims of the ’929 patent were also met. The Accused Instrumentalities regulated the entity by monitoring, controlling, and visualizing movement, non-movement, and position; supported non-geometrical parking regions; and monitored or controlled the movable entity depending on its location relative to the geographical area. See Ex. B at 29–38 (dependent claim elements).

37. Defendant’s direct infringement is not defeated by the involvement of operators or users. Defendant operates the control center and server/API, provides the application, sets the data flows and parking-region logic, determines how parking availability is processed, and transmits location-based information and commands to the smartphone. To the extent an operator or user performed a step, Defendant conditioned access to the ParkZen Platform’s benefits on that

performance and established the manner and timing of the performance through the platform, application, API, dashboard, and terms.

38. WirelessWerx alleges infringement of at least the claims identified in Exhibit B and reserves the right to assert any and all other valid claims of the ’929 patent as discovery proceeds.

39. WirelessWerx has been damaged by Defendant’s direct infringement of the ’929 patent during the patent’s enforceable term.

## VII. COUNT II — DIRECT INFRINGEMENT OF THE ’348 PATENT (35 U.S.C. § 271(a))

40. WirelessWerx repeats and realleges the preceding paragraphs as if fully set forth herein.

41. Defendant has infringed and continues to infringe, literally and/or under the doctrine of equivalents, one or more asserted claims of the ’348 patent, including at least the claims identified in Exhibit D, by making, using, testing, selling, offering for sale, and/or importing the Accused Instrumentalities in the United States. See Ex. D at 3–4 (asserted claims and element 1.0).

42. The Accused Instrumentalities perform a method to wirelessly monitor an entity having an attached transponder. The entity is the user’s vehicle; the smartphone running the ParkZen application functions as an attached transponder associated with that vehicle; and the smartphone wirelessly exchanges parking-related information with the ParkZen server/API. See Ex. D at 4 (claim element 1.0).

43. The Accused Instrumentalities load from a computing device to a memory in an attached transponder a plurality of coordinates. The ParkZen server/API provides parking-location and parking-region information to the smartphone, and the smartphone stores that data in memory for processing and display in the ParkZen application. See Ex. D at 12 (claim element 1.1).

44. The Accused Instrumentalities program a microprocessor in the attached transponder to define a geographical zone using the plurality of coordinates to create an enclosed area on a pixilated image. The ParkZen application executes on the smartphone, uses received parking-location and parking-region data, and displays available parking and regions on a digital map. The asserted digital map and associated region data correspond to the claimed pixilated image and enclosed geographical-zone area. See Ex. D at 15 (claim element 1.2).

45. The Accused Instrumentalities program the microprocessor in the attached transponder to determine the occurrence of an event associated with the status of the entity in relation to the geographical zone. The ParkZen application uses smartphone location, Bluetooth vehicle connection, and motion/activity information to detect parking events, including when the user parks or vacates a parking space. See Ex. D at 20 (claim element 1.3).

46. The Accused Instrumentalities configure the microprocessor in the transponder to transmit data related to the occurrence of an event from the attached transponder to a user. On information and belief, the ParkZen application transmits parking-event and availability data through Defendant's server/API and displays or communicates event-related information to the user, including available parking locations and notifications. See Ex. D at 25 (claim element 1.4).

47. The asserted dependent claims of the '348 patent are also met. The accused event and status are based on movement, position, and non-movement; the event includes parking, vacating, and location-related activity; event data is communicated to a control center and portable device; and the relevant communications occur over cellular, Wi-Fi, Bluetooth, and other wireless networks used by the smartphone and ParkZen Platform. See Ex. D at 50 and the other dependent-claim elements charted in Exhibit D.

48. Defendant directly infringes the ’348 patent because it makes, uses, controls, and commercializes the ParkZen Platform, including the server/API, parking-management platform, smartphone application, data flows, and notification functionality. To the extent any asserted step is performed by an operator or user, Defendant directs or controls that performance by conditioning access to parking-guidance and payment benefits on the performance of the step and by establishing the manner and timing of performance through the Accused Instrumentalities.

49. WirelessWerx alleges infringement of at least the claims identified in Exhibit D and reserves the right to assert any and all other valid claims of the ’348 patent as discovery proceeds.

50. WirelessWerx has been and continues to be damaged by Defendant’s direct infringement of the ’348 patent.

## VIII. COUNT III — DIRECT INFRINGEMENT OF THE ’531 PATENT (35 U.S.C. § 271(a))

51. WirelessWerx repeats and realleges the preceding paragraphs as if fully set forth herein.

52. Defendant directly infringed, literally and/or under the doctrine of equivalents, one or more asserted claims of the ’531 patent, including at least the claims identified in Exhibit F, by making, using, testing, selling, offering for sale, and/or importing the Accused Instrumentalities in the United States during the enforceable term of the ’531 patent and within the applicable damages period. WirelessWerx does not seek damages for conduct occurring after expiration of the ’531 patent. See Ex. F at 3–4 (asserted claims and element 1.0).

53. The Accused Instrumentalities performed a method of providing a location-based service by wirelessly communicating with a user having a portable electronic wireless device. The

user's smartphone running the ParkZen application is the portable electronic wireless device, and the location-based service includes parking availability information, parking guidance, parking notifications, parking navigation, and related services provided to the user based on location. See Ex. F at 4 (claim element 1.0).

54. The Accused Instrumentalities programmed a computing device at a control center to define a geographical zone by creating an area on a pixilated image, with the area representative of the geographical zone. The ParkZen server/API and parking-management platform operate as the computing device and control center, and the accused system defines parking garages, lots, campuses, shopping centers, sports venues, or other participating locations as pre-defined geographical regions displayed on a digital map. See Ex. F at 13 (claim element 1.1).

55. The Accused Instrumentalities loaded a portable electronic wireless device with data associated with a plurality of pre-defined zones of the area. The ParkZen server/API transmits parking-location and parking-region data to the smartphone running the ParkZen application, and the application stores and uses that data to display available parking and related location-based information. See Ex. F at 18 (claim element 1.2).

56. The Accused Instrumentalities sent a command from the control center to the portable electronic wireless device to execute a configurable operation associated with the device's location relative to the geographical zone. The ParkZen parking-management platform and server/API send commands and push notifications to the smartphone, including notifications such as "Open spots nearby," causing the application to display nearby parking, parking availability, navigation, or other location-based service information. See Ex. F at 22 (claim element 1.3).

57. The accused command included instructions that caused the portable electronic wireless device to present an offer or service to the user when the device is located in the area. The

asserted service includes parking availability, navigation to parking, real-time parking guidance, and related parking services. The asserted dependent claims were also met, including claims directed to services based on movement, position, and non-movement; wireless configurability; event-message communications; cellular, satellite, short-range radio, wireless-network, Wi-Fi, and Bluetooth communications; services offered within the geographical zone; and portable devices such as cell phones and automobile navigation systems. See Ex. F at 91, 119, and the other dependent-claim elements charted in Exhibit F.

58. Defendant directly infringed the ’531 patent through its own operation of the ParkZen Platform and, in the alternative, through conduct attributable to Defendant. Defendant controls the control-center computing devices, the server/API, application functionality, parking-region definitions, parking-availability processing, and user-facing commands. Defendant also conditioned operator and user access to the benefits of the accused platform on performance of the steps that Defendant’s platform requires and controls.

59. WirelessWerx alleges infringement of at least the claims identified in Exhibit F and reserves the right to assert any and all other valid claims of the ’531 patent as discovery proceeds.

60. WirelessWerx has been damaged by Defendant’s direct infringement of the ’531 patent during the patent’s enforceable term.

## IX. COUNT IV — INDUCED INFRINGEMENT OF THE ’348 PATENT (35 U.S.C. § 271(b))

61. WirelessWerx repeats and realleges the preceding paragraphs as if fully set forth herein.

62. Defendant has had knowledge of the ’348 patent since no later than the filing of Plaintiff’s Third Amended Complaint in the Pending Action, and in any event since August 5,

2026, when Plaintiff filed and served its Second Amended Complaint and amended infringement contentions in the Pending Action, each of which identified the ’348 patent and included an element-by-element claim chart mapping the asserted ’348 claims to the Accused Instrumentalities.

63. Since obtaining that knowledge, Defendant has known, or has been willfully blind to the fact, that the use of the Accused Instrumentalities by end users and parking operators infringes the asserted claims of the ’348 patent, because the claim chart served on Defendant maps each element of the asserted claims to the accused functionality that Defendant provides, promotes, and instructs users and operators to use.

64. Defendant has specifically intended to induce, and continues to induce, infringement of the ’348 patent. Defendant distributes the ParkZen application to end users through the Apple App Store and Google Play; instructs users to install the application, enable location and Bluetooth permissions, and use the application while driving, parking, and vacating parking spaces; promotes the accused parking-detection and parking-availability functionality through its websites, marketing materials, and the PGS | PARK NOW branding; sends push notifications that direct users to engage the accused functionality; and provides parking operators with the dashboard, API, integration documentation, and support needed to deploy the accused functionality at participating facilities.

65. End users and parking operators directly infringe the asserted claims of the ’348 patent when they use the Accused Instrumentalities as Defendant designs, configures, instructs, and intends. When an end user runs the ParkZen application, the accused system performs each step of the asserted claims as charted in Exhibit D, including loading parking-location and parking-region data to the smartphone, defining the geographical zone on the displayed digital map,

detecting parking events based on the status of the vehicle relative to the zone, and transmitting event-related data. To the extent any step is performed by Defendant's server/API rather than by the user's smartphone, that performance is part of the single accused workflow that Defendant provides and controls.

66. Notwithstanding its knowledge of the '348 patent and of the infringing character of the accused use, Defendant has continued to distribute, promote, configure, and support the Accused Instrumentalities and to instruct users and operators in the accused use.

67. WirelessWerx reserves the right to amend to allege an earlier date of knowledge based on facts learned in discovery. WirelessWerx has been and continues to be damaged by Defendant's induced infringement of the '348 patent.

## X. COUNT V — WILLFUL INFRINGEMENT OF THE '348 PATENT

68. WirelessWerx repeats and realleges the preceding paragraphs as if fully set forth herein.

69. Defendant has had knowledge of the '348 patent since no later than the filing of Plaintiff's Third Amended Complaint in the Pending Action, and in any event since August 5, 2026, when Plaintiff filed and served its Second Amended Complaint and amended infringement contentions in the Pending Action identifying the '348 patent and providing an element-by-element claim chart for the Accused Instrumentalities.

70. Notwithstanding that knowledge, Defendant has continued to make, use, offer to sell, sell, and/or import the Accused Instrumentalities, has continued to operate and commercialize the ParkZen Platform, and has continued the inducing conduct described in Count IV.

71. Defendant's continued infringement of the '348 patent despite its knowledge of the patent and of the served claim chart is deliberate. WirelessWerx reserves the right to amend to

allege an earlier date of knowledge and additional facts supporting willfulness, including additional egregious conduct, based on facts learned in discovery.

72. WirelessWerx has been and continues to be damaged by Defendant's willful infringement of the '348 patent.

## XI. CONDITIONS PRECEDENT

73. Plaintiff has never sold a product. Upon information and belief, Plaintiff predecessor-in-interest has never sold a product. Plaintiff is a non-practicing entity, with no products to mark. Plaintiff has pled all statutory requirements to obtain pre-suit damages. Further, all conditions precedent to recovery are met. Under the rule of reason analysis, Plaintiff has taken reasonable steps to ensure marking by any licensee producing a patented article.

74. Plaintiff and its predecessors-in-interest have entered into settlement licenses with several defendant entities, but none of the settlement licenses were to produce a patented article, for or under the Plaintiff's patents. Duties of confidentiality prevent disclosure of settlement licenses and their terms in this pleading but discovery will show that Plaintiff and its predecessors-in-interest have substantially complied with Section 287(a). Furthermore, each of the defendant entities in the settlement licenses did not agree that they were infringing any of Plaintiff's patents, including the Patents-in-Suit, and thus were not entering into the settlement license to produce a patented article for Plaintiff or under its patents.

75. To the extent Defendant identifies an alleged unmarked product produced for Plaintiff or under Plaintiff's patents, Plaintiff will develop evidence in discovery to either show that the alleged unmarked product does not practice the Patents-in-Suit and that Plaintiff has substantially complied with the marking statute. Defendant has failed to identify any alleged

patented article for which Section 287(a) would apply. Further, Defendant has failed to allege any defendant entity produced a patented article.

76. The policy of § 287 serves three related purposes: (1) helping to avoid innocent infringement; (2) encouraging patentees to give public notice that the article is patented; and (3) aiding the public to identify whether an article is patented. These policy considerations are advanced when parties are allowed to freely settle cases without admitting infringement and thus do not require marking. All settlement licenses were to end litigation and thus the policies of § 287 are not violated. Such a result is further warranted by 35 U.S.C. § 286 which allows for the recovery of damages for six years prior to the filing of the complaint.

77. For each previous settlement license, Plaintiff understood that (1) the settlement license was the end of litigation between the defendant entity and Plaintiff and was not a license where the defendant entity was looking to sell a product under any of Plaintiff's patents; (2) the settlement license was entered into to terminate litigation and prevent future litigation between Plaintiff and defendant entity for patent infringement; (3) defendant entity did not believe it produced any product that could be considered a patentable article under 35 U.S.C. §287; and, (4) Plaintiff believes it has taken reasonable steps to ensure compliance with 35 U.S.C. §287 for each prior settlement license.

78. Each settlement license that was entered into between the defendant entity and Plaintiff was negotiated in the face of continued litigation and while Plaintiff believes there was infringement, no defendant entity agreed that it was infringing. Thus, each prior settlement license reflected a desire to end litigation and as such the policies of § 287 are not violated.

79. For any prior settlement, the settling defendant was not licensed to make and sell infringing products in the future, thus the marking statute imposes no obligation on Plaintiff to

make an effort to require a prior settling defendant to mark the products Plaintiff had accused of infringing its patents.

## XII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff WirelessWerx IP, LLC respectfully requests the following relief:

a. a judgment that Defendant has directly infringed, literally and/or under the doctrine of equivalents, the Patents-in-Suit, with infringement of the ’929 and ’531 patents alleged only for conduct occurring during their enforceable terms, and that Defendant continues to directly infringe the ’348 patent;

b. a judgment that Defendant has induced, and continues to induce, infringement of the ’348 patent;

c. a judgment and order requiring Defendant to pay damages under 35 U.S.C. § 284, in no event less than a reasonable royalty, including past damages consistent with 35 U.S.C. §§ 286 and 287, together with supplemental damages for continuing infringement of the ’348 patent through its expiration or entry of final judgment, with an accounting as needed;

d. a judgment that Defendant’s infringement of the ’348 patent has been willful, and an award of enhanced damages up to three times the amount found or assessed under 35 U.S.C. § 284 as to the ’348 patent, with WirelessWerx reserving the right to establish an earlier date of knowledge and additional egregious conduct in discovery;

e. a judgment that this is an exceptional case under 35 U.S.C. § 285 and an award of WirelessWerx’s reasonable attorneys’ fees;

f. an award of pre-judgment and post-judgment interest on the damages awarded;

g. an award of costs;

h. a permanent injunction enjoining Defendant and its officers, agents, servants, employees, affiliates, and those acting in concert with them from further infringement of the ’348 patent for so long as it remains in force or, in the alternative, an award of an ongoing royalty for future infringement of the ’348 patent while it remains in force; and

i. such other and further relief as the Court deems just and equitable.

## XIII. JURY TRIAL DEMANDED

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff WirelessWerx IP, LLC hereby demands a trial by jury on all issues so triable.

Respectfully submitted,

Ramey LLP

*/s/ William P. Ramey, III*
William P. Ramey, III
Texas Bar No. 24027643
wramey@rameyfirm.com
446 Heights Blvd., Suite 200
Houston, Texas 77007
(713) 426-3923 (telephone)

***Attorneys for WirelessWerx IP, LLC***